1

2

3

4

5

6                                    **UNITED STATES DISTRICT COURT**

7                                          **DISTRICT OF NEVADA**

8   TRACEY LEE GRANT,                                Case No.: 3:17-cv-00065-MMD-WGC

9              Plaintiff,                            **REPORT & RECOMMENDATION
                                                         OF U.S. MAGISTRATE JUDGE**
10  v.
                                                     Re: ECF No. 25
11  NANCY A. BERRYHILL,
    Acting Commissioner of Social Security,

12             Defendant.

13

14          This Report and Recommendation is made to the Honorable Miranda M. Du, United States

15  District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

16  § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

17          Before the court is Plaintiff's Motion for Award of Attorney Fees Pursuant to the Equal

18  Access to Justice Act (EAJA). (ECF Nos. 25, 25-1 to 25-2.) The Commissioner filed a response.

19  (ECF Nos. 29, 29-1.)

20          After a thorough review, it is recommended that the motion be granted.

21                                          **I. BACKGROUND**

22          Plaintiff Tracey Lee Grant, represented by counsel, sought and was granted *in forma*

23  *pauperis* status and filed her complaint requesting review of the Commissioner's final decision.

(ECF Nos. 1, 4, 5.) Grant filed a motion to remand, and the Commissioner filed a cross-motion to affirm. (ECF Nos. 16, 20.) The undersigned issued a report and recommendation that Grant's motion to remand be granted; the Commissioner's cross-motion to affirm be denied; and, that the case be remanded to the Administrative Law Judge (ALJ) for further proceedings. (ECF No. 22.) District Judge Du adopted and accepted the report and recommendation, and the case was remanded to the ALJ for further proceedings and judgment entered in Grant's favor. (ECF Nos. 23, 24.) Grant subsequently filed this motion requesting fees under the EAJA in the amount of $4,669.34.

## II. LEGAL STANDARD

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Pierce v. Underwood*, 487 U.S. 552, 566 n. 2 (1988); *Hardisty v. Astrue*, 592 F.3d 1072, 1076 (9th Cir. 2010). "[F]ees and other expenses" include "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A).

Under the EAJA, attorney's fees are set at the market rate, but capped at $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has set the applicable statutory maximum hourly rate under the EAJA, adjusted for increases in the cost of living by year.

///

///

///

# III. DISCUSSION

## A. Prevailing Party

"[A]n applicant for benefits becomes the prevailing party upon procuring a sentence-four remand for further administrative proceedings, regardless of whether he later succeeds in obtaining the requested benefits." *Flores v. Shalala*, 49 F.3d 562, 568 (9th Cir. 1995) (citing *Shalala v. Schaefer*, 509 U.S. 292 (1993)).

The Commissioner does not dispute that Plaintiff is the prevailing party, but argues that fees should not be awarded because the government's position was substantially justified.

## B. Substantially Justified

The government has the burden of showing that its position was substantially justified. *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (citation omitted). "Substantial justification means 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Id.* (quoting *Pierce*, 487 U.S. at 565). The "position of the United States" includes both "the position taken by the United States in the civil action' as well as the agency's action or inaction 'upon which the civil action is based.'" 28 U.S.C. § 2412(d)(2)(D). In the Social Security context, courts have treated the ALJ's decision as the underlying agency action. *Meier*, 727 F.3d at 870-71 (9th Cir. 2013).

"In determining whether a party is eligible for fees under EAJA, the district court must determine whether the government's position regarding the specific issue on which the district court based its remand was 'substantially justified'—not whether the ALJ would ultimately deny disability benefits." *Gardner v. Berryhill*, 856 F.3d 652, 656-57 (9th Cir. 2017) (citations omitted).

3

"While this circuit has been clear that when an agency's decision is unsupported by substantial evidence it is a strong indication that the position of the United States is not substantially justified, this circuit has never stated that *every* time this court reverses and remands the ALJ's decision for lack of substantial evidence the claimant should be awarded attorney's fees." *Campbell v. Astrue*, 736 F.3d 867, 869 (9th Cir. 2013). "[I]t 'will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in … substantial … evidence in the record.'" *Id.* at 868 (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005)). Success on the merits is not dispositive, and the court must assess the justification of the Commissioner's position based on its reasonableness before the district court made its decision on the merits. *Decker v. Berryhill*, 856 F.3d 659, 664 (9th Cir. 2017).

Here, the Commissioner argues that Plaintiff should not be awarded fees under the EAJA because the government's position was substantially justified.

**1. Dr. Teichgraeber's March 2009 Opinions**

First, the Commissioner contends the government was substantially justified with respect to Dr. Teichgraeber's 2009 opinion.

The Commissioner argues that the ALJ had no obligation to weigh a medical opinion from a source who believed Plaintiff was disabled that preceded the time Plaintiff claimed to be disabled.

In this case, the ALJ had concluded that Plaintiff had the severe impairments of: bipolar disorder, post-traumatic stress disorder (PTSD), a history of alcohol and polysubstance abuse, a history of osteopenia, chronic obstructive pulmonary disease (COPD), sciatic due to displacement of a lumbar disc, and myalgia and myositis. (Administrative Record (AR) 24.) The ALJ noted several references to fibromyalgia but found that the evidence to support a finding of that condition

as a severe impairment was not present in the record. (AR 25.) The ALJ assessed Plaintiff as having the residual functional capacity (RFC) to perform light work, except she was capable of only occasional postural activities, including climbing, balancing, stooping, kneeling crouching and crawling; she should avoid overhead reaching; she should avoid extreme heat, extreme cold, fumes and dust, hazards (including working at heights), and operating dangerous moving machinery; she was capable of simple, routine tasks, and brief but superficial contact with supervisors, co-workers and the general public. (AR 27.) The ALJ concluded Plaintiff had no past relevant work, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and as such was not disabled. (AR 33-34.)

Dr. Teichgraeber completed a medical opinion regarding Plaintiff's mental ability to do work-related activities, and a fibromyalgia questionnaire on March 11, 2009. (AR 399-401, 402-407.) The ALJ's decision did not specifically mention Dr. Teichgraeber's March 2009 opinion. Plaintiff had previously applied for benefits, and Plaintiff argued that the prior unfavorable benefits determination from 2010 also did not evaluate Dr. Teichgraeber's March 11, 2009 opinion. The Commissioner argued that the agency already adjudicated Plaintiff not disabled through 201, which is binding because Plaintiff did not challenge that determination, and that the ALJ was only required to develop evidence from approximately one year prior to the application date, or further if there was reason to believe development of an earlier period was necessary.

The undersigned found that the ALJ erred in failing to reference or specifically reject Dr. Teichgraeber's March 2009 opinion, but not for the reasons Plaintiff proffered. (ECF No. 22 at 7-8.) The court acknowledged that the regulations tell the agency to develop a claimant's complete medical history for at least the 12 months preceding the month in which the claimant files the application for benefits "unless there is a reason to believe that development of an earlier

period is necessary" or if the claimant says the disability began less than 12 months before the application was filed. (ECF No. 22 at 8, citing 20 C.F.R. § 416.912(b)(1).) The regulations similarly define a "complete medical history," as covering 12 months before the application unless there is reason to believe the disability began earlier. (*Id.*, citing 20 C.F.R. § 416.912(b)(1)(ii)).

Plaintiff claimed an onset of disability on August 15, 2013, about a month prior to the time the application was filed; and the court acknowledged that the ALJ was only required to develop the record for the prior 12 months, unless there was a reason to believe Plaintiff's disability began earlier.

The court pointed out that it might have concluded that there was no error in failing to consider opinions that pre-dated the alleged onset date by four years, but in this case the ALJ herself deemed other records *during this time period relevant*. The ALJ *cited* (but did not discuss) Dr. Teichgraber's March 2009 opinions in her discussion of Plaintiff's fibromyalgia diagnosis, implying she did consider the records concerning Plaintiff's condition in 2009 as relevant to Plaintiff's current claim even if the ALJ ultimately concluded fibromyalgia was not a severe impairment. Furthermore, the ALJ's discussion of Plaintiff's mental impairments generally referenced her mental health records, which included other records that significantly pre-dated the alleged onset date. The court reasoned that if other mental health records from 2009, 2010 and 2011 were relevant, then the March 2009 opinions should also have been discussed. The ALJ discussed Plaintiff's fibromyalgia diagnosis, but then ignored Dr. Teichgraeber's opinions regarding Plaintiff's ability to function mentally and physically. In the report and recommendation, the court discussed how this omission was particularly important in a case involving mental health limitations, where having a longitudinal picture of a claimant's mental health condition is very useful.

The Commissioner argues that the undersigned's reasoning was flawed because there is a big difference between assessing records regarding whether an impairment qualifies as a severe impairment or to understand a claimant's medical history, and requiring an ALJ to explain how she weighed a medical opinion from a time outside the period of review.

To find substantial justification, the court must find a reasonable basis for the position taken in both law and in fact. The ALJ herself found many records that extended between the 12 months prior to the filing of the application or the onset date of disability to be relevant to an assessment of Plaintiff's mental health, yet failed to specifically mention the opinions that were adverse to her own findings concerning Plaintiff's mental health and ultimate determination of disability. As was explained in the report and recommendation, had the ALJ simply failed to discuss an opinion that pre-dated the alleged onset date by four years, the court would have agreed with the Commissioner, but the ALJ's decision implies that she found records from this time period relevant, and in doing so she erred in relying on some of those records but ignoring others. Therefore, the court finds the government's position was not substantially justified.

**2. Plaintiff's Testimony**

Second, the Commissioner argues the government was substantially justified in assessing Plaintiff's subjective allegations, and rehashes the arguments made in response to the motion for remand.

In the report and recommendation, the undersigned concluded that the ALJ failed to set forth clear and convincing reasons supported by substantial evidence for finding Plaintiff's testimony less than credible.

First, the ALJ found Plaintiff less than credible due to her daily activities, finding they demonstrated she was more capable than alleged. The court found that the ALJ, as in the cases of

*Garrison* and *Reveals*, improperly ignored the claimant's explanation concerning limitations in completing daily activities. Here, the ALJ relied on Plaintiff's ability to take care of personal needs, cook and go shopping, but ignored Plaintiff's statements that she did those things when she was able, and also testified about her anxiety in those situations; that she sometimes would not change her clothes for weeks or take care of her hair when she suffered depressive episodes; that she could prepare easy meals, but at times did not eat because of racing thoughts or mood swings, and when she did make meals it took a long time because she was overwhelmed. She stated she had not been able to do house or yard work for the past three to six years, and had problems focusing when she was manic. She said she did not go out unless she had to go to see a doctor or counselor or to check her mail, and her ability to go shopping depended on her mood and pain level. She stated various times that she had difficulty focusing. She could not enjoy social activities because of her anxiety and panic attacks, which had worsened. The ALJ did not take these qualifying statements into account in assessing Plaintiff's credibility as it related to her ability to engage in daily activities.

Based on this, the court found the ALJ's finding that Plaintiff's testimony was inconsistent with her reported daily activities was not supported by substantial evidence.

The ALJ also found Plaintiff less than credible because her earnings showed she had not worked a full-time job for any significant period of time as an adult, but failed to note Plaintiff had previously submitted disability applications, alleging an onset of disability in 1998.

The ALJ also relied on Plaintiff's mental health treatment records as a basis for finding her less than credible, but the court found this too was not supported by substantial evidence. While the ALJ noted Plaintiff's varying mental health diagnoses and symptoms, the ALJ focused on "boilerplate-type" language in the records that Plaintiff was well groomed, well developed, well nourished and oriented, ignoring much of the narrative portions of the records. In addition, the

ALJ found Plaintiff was only receiving "conservative" treatment of counseling and medication for her mental health condition, but did not explain how this detracted from her subjective symptom testimony. The undersigned noted that the ALJ's finding implied that Plaintiff would have required hospitalization or inpatient treatment or institutionalization to have her testimony credited.

At this point, the Commissioner reasserts the arguments made in the cross-motion to affirm the ALJ's decision in arguing its position was substantially justified, but the court disagrees for the reasons stated above and in the report and recommendation.

Therefore, Plaintiff's motion for fees under the EAJA should be granted.

**C. Amount of Fees**

An EAJA fee award must be reasonable. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

The Commissioner argues that Plaintiff is not entitled to any award of fees because the government was substantially justified in its position, and does not assert that the fees requested are otherwise unreasonable.

The court finds the overall time spent on the case, 24.6 hours (22.3 hours of attorney time and 2.3 hours of paralegal time), to be reasonable. *See also Lindrum v. Berryhill,* 3:16-cv-00230-LRH-WGC (finding 23.3 hours to be reasonable overall); *Hardisty v. Berryhill*, 3:15-cv-00265-LRH-WGC (finding 39.2 hours spent generally reasonable).

The court will now discuss the applicable hourly rates. Plaintiff seeks a total of $4,669.34 in fees and no costs. Plaintiff argues that the applicable rate for paralegal time should be $125, which Plaintiff's counsel contends is market rate. With no objection to the paralegal rate, the court finds this to be reasonable.

As for the attorney hourly rate, the work on this case was done at the end of 2016 and in 2017 and 2018. The maximum statutory hourly rates for attorneys in those years were: $192.68 (2016), $196.79 (2017) and $200.78 (first half of 2018). *See* https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039, last visited December 7, 2018.

Plaintiff's motion and supporting documentation, however, reference various hourly rates for attorney time: $196.70 (which is nine cents less than the statutory maximum EAJA rate set by the Ninth Circuit), $190.28 which is the statutory rate for 2015 (but this case was litigated in 2016-2018), $192.68 (the 2016 rate), as well as $196.79 (the 2017 rate). (ECF No. 25 at 2:12, 4:8, 7:17, 7:26, 8:6, 13:7; ECF No. 25-1 at 1, 2.)

Of the 22.3 attorney hours spent on this case, 1.6 of those hours were in 2016, 19.4 hours were in 2017, and 1.3 hours were in 2018. 1.6 hours at a rate of $192.68 ($308.29), 19.4 hours at a rate of $196.79 ($3,817.73), and 1.3 hours at a rate of $200.78 ($261.01) brings the total fees for attorney time to $4,387.03. In addition, 2.3 hours of paralegal time at a rate of $125 is $287.50. Thus, the total fees should be $4,674.53.

Plaintiff's request is for $4,669.34. The reason for the discrepancy appears to be that Plaintiff calculated the attorney time in 2018 at the 2017 rate. (ECF No. 25-1 at 2.) This is likely because no rate for 2018 was posted as of the time Plaintiff's motion was filed. With the benefit of the 2018 rate now being posted, the court recommends the fee award consider the 2018 rate for work performed by counsel in 2018. Therefore, the total fees should be $4,674.53.

**D. May the Fees be Paid Directly to Counsel?**

The motion requests that the fees and costs be paid directly to counsel, indicating there has been an assignment by Plaintiff.

The Commissioner argues, in a footnote, that if any fees are awarded, they belong to Plaintiff and not her attorney. (ECF No. 29 at 10 n. 3.)

In *Astrue v. Ratliff*, 560 U.S. 586 (2010), the Supreme Court held that fee awards under the EAJA are the property of the claimant, who is the prevailing party, and not the attorney. To avoid the situation where fees and costs are paid to a claimant, and then an attorney is not paid for work done on the case, many Social Security attorneys ask their clients to assign their right to collect the fees to counsel, and this appears to be proper when there is no applicable government offset. *See Ratliff*, 560 U.S. at 597 (discussing the government's practice of doing this when there was no government offset). Here, there government does not assert that it is entitled to an offset; therefore, Plaintiff's assignment of the fee award is permissible, and the award may be paid directly to counsel. *See e.g. Oberg v. Comm'r. Soc. Sec. Admin.*, 6:14-cv-01839-SI, 2016 WL 1385294 (D. Or. Apr. 7, 2016) (awarding fees under EAJA to the plaintiff, and stating that if it is determined the fees are not subject to any offset, then the check should be made to counsel, based on the plaintiff's assignment of the amount to counsel).

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Plaintiff's motion for attorney's fees under the EAJA in the amount of $4,674.53, and allow the award to be paid by the government directly to Plaintiff's counsel pursuant to Plaintiff's assignment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report

and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  December 10, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE